Argued September 17, affirmed October 1, 1918.

# HAYES *v.* HAYES.

(174 Pac. 579.)

**Specific Performance—Oral Contract to Convey Realty—Proof—Sufficiency.**

1. In suit for specific performance of oral contract to convey realty, it is required first that the contract itself be clearly proved; the remaining question being whether there has been sufficient showing of part performance to take the case out of the statute of frauds.

**Specific Performance—Proof of Contract—Sufficiency.**

2. In suit by plaintiff to enforce against the other heirs and administrator of his deceased father a parol agreement by deceased to convey to plaintiff 50 acres of land, *held*, that oral contract to convey was sufficiently proven.

**Frauds, Statute of—Oral Contract to Convey—Evidence.**

3. Possession relied upon to take the case of an oral contract to convey out of the statute of frauds must be marked and certain, and referable only to such contract.

**Wills—Contract to Devise Realty—What Constitutes—"Give."**

4. Even if father said to his son, "I will give you 50 acres, if you will work for me until the farm is paid for," where the son accepted the offer and performed the work, the result would be a contract; the use of the word "give" not showing purpose of father to make a will.

**Frauds, Statute of—Part Performance of Oral Contract to Convey Realty—Evidence.**

5. Where father offered his son a farm, provided the son would work for him until the farm was paid for, part performance, sufficient to take the case out of the statute of frauds, would be established by the son's performance of labor, taking possession of and making permanent improvements on farm, and the father's marking out the line of division and building fence on boundary.

**Specific Performance—Oral Contract to Convey—Defense.**

6. In suit by plaintiff to enforce against other heirs and administrator of his father a parol agreement to convey 50 acres of land, it was no defense that before bringing suit plaintiff had offered to convey his interest in remainder of father's estate, if defendants would transfer to him all possible interest in the 50 acres.

[As to certainty in contract as requisite for specific performance, see note in 26 Am. Dec. 661.]

From Linn: GEORGE G. BINGHAM, Judge.

Department 1.

This is a suit whereby the plaintiff seeks to enforce against the other heirs and the administrator of his deceased father a parol agreement said to have been made by the latter to convey to the plaintiff fifty acres of land. The substance of his complaint is as follows: In 1901 the father purchased a 250-acre farm in Linn County, upon which he paid all the purchase price but $1,000, and agreed with the plaintiff at the time that if the latter would remain upon the farm and contribute his labor in its necessary management and cultivation until it was fully paid for, he would convey to the plaintiff fifty acres thereof as his compensation. The plaintiff claims to have fully performed the contract on his part by working on the farm until the remainder of the purchase price was fully discharged and in pursuance of their stipulation his father set off to him fifty acres out of the north and west part of the large tract, and he went into possession thereof under the contract, built a house on his land thus designated and made other improvements and lived there for a time. He then took employment elsewhere, agreeing with his father that the latter should have the use of the land in consideration of his paying the taxes thereon until the son should want possession of it again. A few years later he returned, and at his father's request made an exchange with him, giving up the first fifty acres and taking in lieu thereof a like area from the north end of the original 250-acre tract. With his parent's consent and approval he moved the house mentioned from the first tract to the new one, built on the latter a new barn and other improvements of considerable value and remained in possession, living thereon with his family continuously thereafter.

His father died suddenly on June 10, 1916, without having made the deed, although the son had asked him for a conveyance. After his father's death the plaintiff demanded a deed from his brother and sisters, but they refused to execute one, and hence this suit.

The relationship of the parties, the death of the father, the appointment of the elder son, J. L. Hayes, as administrator, are all admitted, but the remainder of the complaint is denied. The defendants allege that there was no contract made between the plaintiff and his father. They state that he was anxious to have his children living near him and that in pursuance of that desire he allowed the plaintiff to go upon the piece of land mentioned, requiring him to pay a small rent therefor, that he followed the same course with his other son and his unmarried daughter, Huldah Hayes, and that the only occupancy that either of them had of any of the land was that of a mere tenant at a nominal rent.

This in turn is denied by the reply. The Circuit Court heard the case and entered a decree according to the prayer of the complaint. The defendants appeal.          AFFIRMED.

For appellants there was a brief over the names of *Messrs. Weatherford & Weatherford* and *Mr. A. A. Tussing,* with oral arguments by *Mr. James K. Weatherford* and *Mr. Tussing.*

For respondent there was a brief over the name of *Messrs. Hill & Marks,* with an oral argument by *Mr. Gale S. Hill.*

BURNETT, J.—This litigation is an example of the too frequent outcome of lax methods of business between near relatives, but however unwelcome the task,

we are compelled to give consideration to the case and decide it as we would any other of the kind. At the outset we must remember that we are not administering upon the estate of the deceased father; neither are we enforcing a contract between the son and his father for the latter to make a will in favor of the former. The issue is joined upon the question of whether they entered into the contract mentioned in the complaint, and we are to determine the matter on the same principles as if they had up to that time been utter strangers.

If the father and son did anything, they contracted with each other, the former to sell and the latter to buy land in the first instance, and later on to exchange tracts, and it is for us to ascertain from the record whether such an oral agreement was made, and if so, whether there has been such part performance thereof as to take it out of the statute of frauds and to authorize the court to compel the remainder of the performance so as to work out a complete execution of the agreement actually made. The question is thus stated on the general issue because there is no testimony whatever tending to show that the plaintiff occupied any land in the tract at a nominal rent, as stated in the answer.

1, 2. The principles governing a dispute of this kind are well settled. The difficulty in this, as in most other cases of the sort, is the question of fact. It is required, first, that the contract itself be clearly proved, this being the foundation of the whole matter, and the remaining question to be determined is whether there has been sufficient showing of part performance. The plaintiff is well supported in his contention that there was an agreement of the kind alleged in his complaint. Indeed, throughout the testimony on the part of the

defendants there is a vein clearly indicating that the plaintiff had a substantial claim of some kind upon the particular tract in question. The obvious effort of the defendants by their testimony is to show that the design of the father was ultimately to devise certain lands to each of his children, but that his intention was never carried out. On the other hand, the showing is very clear to the effect that the father made the agreement and that after the place was fully paid for in pursuance thereof he designated to the plaintiff a certain tract which he should have for his own, allowed him to go into possession thereof, build himself a dwelling thereon and to live there, and later on exchanged tracts with him, permitting him to move the house from its first site to the new one on the north end of the place, to build a barn and to make other improvements thereon, and not only so, but also himself measured on one side of the farm from the northwest corner and directed his elder son to go with the plaintiff and measure on the other side from the northeast corner, so as to establish the corners on the south, had his elder son also plow a furrow across from one side of the place to the other, between these southern corners so fixed, and designated it as the south boundary line of the plaintiff's land. Even further, the father built his own half of the division fence between the fifty-acre tract on the north thus set off to the plaintiff and the remainder of the farm, and the son was engaged in building his half when his father died. The effort to belittle all these things into a mere tenancy at will and to show a mere probable plan of the father to devise the premises to the plaintiff, is against the strong preponderance of the testimony.

3-5. The argument that this solution of the question would give the plaintiff an advantage over the other

heirs in the distribution of the father's remaining
estate is not by the mark. It does not meet the ques-
tion made by the pleading. The father had a right
to make such a contract with the plaintiff and that is
what we are called upon to adjust. It was the father's
option to contract or not with his other children. This
agreement between him and the plaintiff is not to be
taken as a distribution of his estate. As contracting
parties, the son and the father occupied the same posi-
tion in respect to each other as if they had not been
related by blood, and the cause must be so determined.
The case is to be distinguished from the early case of
*Brown* v. *Lord,* 7 Or. 302, 307, wherein the testimony
was contradictory as to the particular tract of land
that the son was to have. Besides this, there was no
marked change of possession in that instance. Some
witnesses said that the father, Brown, was to give all
his land unreservedly to the son, others claimed that
the father was to keep forty acres, including the resi-
dence and other buildings, and still others claimed
that he was only to retain a life estate in the whole
property. Under these circumstances this court held
that the testimony was not sufficiently clear and defi-
nite to establish the contract. To all outward appear-
ances, also, the mode of living on the Brown place
was the same that it had always been. In that respect
the general rule is that the possession relied upon to
take the case out of the statute must be marked and
certain and referable only to such a contract. In the
case at bar all was done that practically could have
been done to set off and designate the premises, short
of a survey by a professional surveyor. There is no
potency in the argument that the use of the word
"give" in speaking of the transaction declares the pur-
pose of the father to make a will. If A should say to
B, "I will give you $50 if you will deliver to me ten

cords of wood by October 1st next following,'' and B should deliver the wood according to the statement, the result would be a contract. And so here, even if the father said those words, ''I will give you fifty acres of land if you will work for me until the farm is paid for,'' and the son accepted the offer and performed the work according thereto, the result is just the same, a contract. The part performance is established by the son's performing the labor, then taking possession of the land, making permanent improvements thereon, and the father's marking out the line of division and building his fence on the boundary.

The issue is governed by such cases as *Barrett* v. *Schleich,* 37 Or. 613 (62 Pac. 792). Further citation of precedents in this state is unnecessary. The principles are well settled. The cases are in harmony; they turn uniformly upon a question of fact and the sufficiency of acts of the parties to amount to part performance.

6. In the argument of the defendants much stress was laid upon the fact that before commencing this suit the plaintiff offered to convey to the defendants his interest in the remainder of his father's estate if they would join in transferring to him all their possible estate in the fifty acres he claims in this litigation. He had the privilege of thus attempting to buy his peace without prejudice to his actual rights and the defendants have no cause of complaint if, having rejected the olive branch of compromise, they perish by the sword of specific performance.

The decision of the Circuit Court, which had the opportunity to observe the witnesses and more efficiently estimate the value of their testimony, must be affirmed.                                        AFFIRMED.

MCBRIDE, C. J., and BENSON and HARRIS, JJ., concur.